The Honorable Kim Hendren State Senator 1501 Highway 72 Southeast Gravette, Arkansas 72736-9438
Dear Senator Hendren:
I am writing in response to your request for what you characterize as "an interpretation of Arkansas Statute § 6-20-401(4)(B), the authority of the Department of Education not to follow this statute, and the authority of the Department of Education to be arbitrary and capricious in the interpretation of the statute."
Specifically, you have asked me to address the following:
 1. Does a school district which has pledged its debt service millage to secure bonded indebtedness and allocates the revenue received in its records between MO and the debt service millage by its treasurer have to include the debt service millage revenue allocated in its records in the proceeds of the local taxes for the 40% pullback calculation per A.C.A. 6-20-401(4)(B)?
 2. If the AG opines that it does not have to be included in the 40% pullback, which is what the statute states, does the Department of Education ("DOE") have the authority to require a school district to include the allocated revenue which has been pledged to secure bonded indebtedness anyway in the numerator of the 40% pullback calculation. *Page 2 
 3. If the DOE has authority to require the inclusion of the revenue from the pledged millage revenue in the numerator, does it not have to include the debt service millage rate in the calculation of the denominator too, versus just in the numerator?
By way of background, you report the following:
 This is, in the case of the Gravette School District, a one million dollar question. If we were not forced to include the debt service millage revenue in the 40% Pullback calculation by the Department of Education, the Gravette School District would have one million in revenue to spend in the current school year versus deferring forever. To me, the statute is very clear — if a school district has to pledge the revenue from the debt service millage and allocates such in its records, it is not part of the 40% Pullback calculation. As stated, the question is whether the Executive Branch of the Government in the form of the Department of Education can require the inclusion versus following the directive from the Legislative Branch of the Government in the form of a statute . . . and do so by following the statute in part by not including the debt service millage in the calculation of the denominator and not following in part by requiring it to be included in the numerator.
RESPONSE
In my opinion, the answer to your first question is "no." Pursuant to A.C.A. § 6-20-401(4)(B), the only millage that factors into the 40% pullback calculation is the uniform rate of tax mandated by Amendment 74 or any local millage devoted to maintenance and operation of the schools that is greater than the uniform rate of tax. The statute expressly excludes from the calculation any millage, or revenues realized therefrom, that is pledged to secure a school district's bonded indebtedness. Given this response, I believe the answer to your second and third questions is likewise "no." Whether expressed as a fraction or not, the multiplicand dealing with millage in the 40% pullback calculation must be based exclusively on the millage devoted to maintenance and operation of the schools, not on a millage devoted to securing a school district's bonded indebtedness. I believe that any effort by the Department of Education to factor a debt-service *Page 3 
millage into the 40% pullback equation would violate the express terms of A.C.A. § 6-20-401(4)(B).
Question 1: Does a school district which has pledged its debtservice millage to secure bonded indebtedness and allocates therevenue received in its records between MO and the debt servicemillage by its treasurer have to include the debt service millagerevenue allocated in its records in the proceeds of the local taxesfor the 40% pullback calculation per A.C.A. 6-20-401(4)(B)?
In my opinion, although the statute is unclear in various unrelated respects that might warrant legislative clarification, the answer to this question as posed is "no."
As explained in the Special Masters' Report to the Supreme Court of Arkansas in the case of Lake View School District No. 25 ofPhillips County v. Governor Mike Huckabee, No. 01-836 (2005):
 The term "40% pullback" is used by Arkansas school officials to describe a somewhat puzzling method by which school districts are permitted to include in their revenue receipts for their June 30 fiscal year that sum equal to "forty percent (40%) of the proceeds of the local taxes which are not pledged to secure bonded indebtedness or forty percent (40%) of the revenue from the uniform rate of tax whichever is greater collected in the succeeding calendar year." Ark. Code Ann. § 6-20-401(4)(B) (Supp. 2005). The following explanation is derived from the statutory language and from the testimony in hearings before us of Dr. Don Stewart, Deputy Commissioner of Education, and Mr. David Cauldwell, Business Manager of the Rogers School District.
 A school district may accrue (or "pull back") into its fiscal year the 40% pullback amount, which is future tax revenue that will become payable during the second half of the school district's fiscal year, or, said another way, during the "succeeding calendar year." The delay in collection derives from the fact that a school district's fiscal year overlaps two successive calendar years, whereas tax assessment and collection operate on a calendar-year basis. So, for example, in a school district's July 1, 2004-June 30, 2005 fiscal year, the tax revenues that will fund its 40% pullback amount will include timely *Page 4 
payments made pursuant to tax assessments that were performed in calendar year 2004, then billed and payable in spring, 2005 and finally due in October, 2005.
 Dr. Stewart explained that the pullback phenomenon originated in the 1940s and 1950s when county collectors found themselves in possession of large amounts of unused funds, resulting from early collections, of which the school districts were in need. He opined that, once the practice began and the school districts became accustomed to using the money early, it could not be stopped.
Without presuming to paraphrase the Court's not entirely satisfying explanation, I will simply note that A.C.A. § 6-20-401 (Supp. 2007), which sets forth the definitions that bear on your inquiry, provides in pertinent part:
 (4) "Revenue receipts of a school district" means those receipts that do not result in increasing school indebtedness or in depleting school property. Specifically, revenue receipts of a school district for any fiscal year shall consist of the following funds:
 (A) Net cash balance on hand at the beginning of the school fiscal year, July 1;
 (B) The remaining net proceeds of local taxes collected in the calendar year in which the school fiscal year started plus
 forty percent (40%) of the proceeds of the local taxes that are not pledged to secure bonded indebtedness or forty percent (40%) of the revenue from the uniform rate of tax whichever is greater collected in the succeeding calendar year. This forty percent (40%) shall be determined by applying the following formula: The greater of the assessed valuation multiplied by the tax rate which is not pledged to secure bonded indebtedness multiplied by forty percent (40%) or the assessed valuation multiplied by the uniform rate of tax multiplied by forty percent (40%); and
 (C) The net proceeds of all other funds accrued or placed to the credit of the district during the fiscal year from regular *Page 5 
revenue sources, including, but not limited to, state and federal funding.
(Emphasis added.)
The uniform rate of tax (the "URT") is the 25-mill minimum property tax mandated in Ark. Const. amend. 74 to be dedicated to maintenance and operation ("MO") of a district's schools — a category that does not include tax revenues pledged to secure bonded indebtedness. The URT is a constitutionally mandated absolute minimum rate of taxation for MO. See Ops. Att'y Gen. Nos. 2004-359, 2004-134, 2003-065 and 2003-031 (opining that the URT is a mandatory state levy enacted by the voters in adopting Amendment 74). The statute appears to acknowledge the distinction between the state millage (namely, the URT) devoted to MO and a local millage devoted to the same purpose. Inasmuch as the URT is a constitutionally obligatory levy, it is an absolute floor for the levy of MO taxes, which are of necessity "not pledged to secure bonded indebtedness." Only if the term "local taxes" were read as excluding revenues realized from imposing the URT would it be possible that the "net proceeds of local taxes not pledged to secure bonded indebtedness" would be less than the revenues realized from executing the URT.
Subsection (4)(B) of this statute is somewhat confusing. The first sentence of this subsection indicates that the 40% figure will be calculated based upon either "the proceeds of the local taxes that are not pledged to secure bonded indebtedness" or "therevenue from the uniform rate of tax." (Emphases added.) However, the second sentence sets forth a formula for computing the 40% pullback that is based not upon millage revenue actually realized for or expended upon MO, but rather upon whatever simple fraction constitutes the greater of the URT or any local millage devoted to MO. Under this formula, the 40% pullback will be calculated by multiplying assessed valuation first by the higher of the local millage or the 25-mill URT and then by 0.4. This formula takes no account of either the "net proceeds of local taxes" not pledged to secure bonded indebtedness or, if the amount is greater, the net proceeds realized from imposing the URT. Rather, it factors into the multiplication only the pertinent millage rate devoted to MO, irrespective of what revenues a school district actually realizes from levying on the pertinent millage. *Page 6 
Specifically with respect to your question, then, I do not believe revenues realized from the levy of a debt service millage should be considered in calculating the 40% pullback. The formula set forth in A.C.A. § 6-20-401(4)(B) does not factor into the pullback calculation any debt service millage approved by the voters to secure a bonded indebtedness. Moreover, with respect to your concern that revenues realized to secure bonded indebtedness are reportedly being considered in calculating the pullback, I will note that the only reference to "proceeds" in subsection (4)(b) of the statute is to those local millage revenues "that are not pledged to securebonded indebtedness." (Emphasis added.) Likewise, the reference to "revenue" realized from executing the URT is by definition to moneys devoted exclusively to MO. See Amendment 74.
Question 2: If the AG opines that it does not have to beincluded in the 40% pullback, which is what the statute states, doesthe Department of Education ("DOE") have the authority to require aschool district to include the allocated revenue which has beenpledged to secure bonded indebtedness anyway in the numerator of the40% pullback calculation.
In my opinion, in light of my answer to your previous question, the answer to this question is "no."
As I noted above, under A.C.A. § 6-20-401(4)(B), the 40% pullback is calculated by first multiplying assessed valuation times the greater of the local millage or the 25-mill URT and then multiplying the product by 0.4. The only factors in this formula that might be expressed in the form of fractions having a numerator and denominator are the pertinent millage and the statutorily designated 40%.
Assuming you expressed the millage in the form of a fraction, implicit in my response to your previous question is a conclusion that this fraction should reflect only the pertinent millage devoted to MO. It follows that nothing related to a millage pledged to secure bonded indebtedness should affect in the least the numerator or the denominator in the formula used to calculate the 40% pullback. The only other fraction involved in the calculation is the 40% itself, which reduced from 40/100 to its lowest common denominator would invariably be 2/5. Again, in my opinion, any practice by the DOE that would calculate the 40% pullback taking into account anything related to a millage pledged to secure bonded indebtedness would run afoul of the formula set forth in A.C.A. § 6-20-401(4)(B). *Page 7 
 Question 3: If the DOE has authority to require the inclusionof the revenue from the pledged millage revenue in the numerator,does it not have to include the debt service millage rate in thecalculation of the denominator too, versus just in thenumerator?
This question is moot in light of my response to question 2, supra.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/JHD:cyh